HARLAND BRAUN SBN 41842
Braun & Braun LLP
Braun & Braun LLP
10250 Constellation Blvd., Suite 1020
Los Angeles, California 90067
Tel: (310) 277-4777
Fax: (310) 507-0232
email: harland@braunlaw.com

BIN LI, State Bar No. 223126
LAW OFFICES OF BIN LI, PLC
730 N. Diamond Bar Blvd.
Diamond Bar, CA 91765
Telephone: (909) 861-6880
Facsimile: (909) 861-8820
email: bli@libinlaw.com

Attorneys for Defendant
GUAN LEI

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-127-MWF |
|---|---|
| Plaintiff, | |
| v. | **DEFENDANT GUAN LEI'S EX PARTE APPLICATION FOR REVIEW/ RECONSIDERATION OF ORDER DENYING RELEASE AND IMPOSING DETENTION UNDER 18 U.S.C. § 3142(e)** |
| GUAN LEI, | |
| Defendant. | |

Defendant Guan Lei, by and through his attorneys of record, Bin Li, and Harland Braun, applies for ex parte review/reconsideration of order denying release and imposing detention under 18 U.S.C. § 3142(e).

This application is based on the files and records in this case, the attached exhibits and declarations, and such arguments as the Court may entertain at the time of a hearing before the Court.

1

Respectfully submitted,


Dated:  January 19, 2020

                         LAW OFFICES OF BIN LI, PLC

                         /s/ Bin Li
                         Bin Li, Esq.
                         Attorney for Defendant
                         Guan Lei

1

2

### MEMORANDUM OF POINTS AND AUTHORITIES

3

Defendant Guan Lei requests this Court to reconsider the pretrial

4

detention order of Magistrate Judge Patricia Donahue (Dkt. No. 34)

5

and order the release of Defendant to a third-party custodian with,

6

if required, electronic monitoring using the Global Positioning

7

Satellite technology through the U.S. Probation and Pretrial Services

8

System.

9

10

A. **Current medical status of Defendant.**

11

12

All visitation, including attorney visitation, remains suspended

13

since November 16, 2020 at the Metropolitan Detention Center Los

14

Angeles where Defendant remains pending trial. Since then, he has

15

been quarantined three times for exposure to the coronavirus and

16

recently his jail mate tested positive for covid-19 and he was

17

removed from the 9th floor to 6th floor of MDC. California has now

18

topped three million coronavirus cases and 33,000 deaths.[1]

Communication rights between Defendant and counsel have been

19

limited to jailhouse telephone calls, which are not protected by the

20

attorney-client communications privilege. We could not go over the

21

37,000 plus documents produced by the Government with Defendant.

22

23

B. **Meet and confer has consistently failed.**

24

25

The government obtained an order for the deposition of material

26

witness ZHIHUI YANG, (Dkt. Nos. 104). This deposition was taken on

27

28

[1] Johns Hopkins Coronavirus Resource Center
https://coronavirus.jhu.edu/us-map

3

1    January 7, 2021.

2         Prior to this deposition, on December 8, 2021, defense counsel

3    made a written request via email to MDC Los Angeles for an emergency

4    attorney-client telephone conference with Defendant under conditions

5    where the attorney-client communication privilege protected by <u>Fed.</u>

6    <u>Rules of Evidence</u> 502, is protected against government snooping or

7    inadvertent disclosure.  Defense counsel also requested arrangements

8    for Defendant to execute a limited waiver of his discovery rights

9    prior to the YANG deposition as mandated by the Order.  Exhibit A.

10   <u>Declaration of attorney Bin Li, Esq</u>. at paragraph 2.

11        MDC Los Angeles responded by email the following day, stating

12   that due to the ongoing pandemic, it was not possible to arrange any

13   telephone conference between counsel and client where the attorney-

14   client communication was protected or obtain the written limited

15   waiver.  No other reasons were given, no other options were given by

16   the Bureau of Prisons or the prosecutor.  The correspondence is

17   attached as Exhibit B. <u>Li</u> at ¶ 3.

18        The deposition went forward, with defense counsel hindered in

19   preparation and attorney-client communications before and during the

20   deposition exposed to government surveillance and with no opportunity

21   to review relevant documents.  <u>Li</u> at ¶ 4.

22        The government declined the request for release on own

23   recognizance and meet and confer continued via email correspondence

24   dated January 11 and 12, 2021, Exhibits C, D, E, F.  On January 14,

25   2021, Defendant offered $50,000 unsecured bails, GPS tracking,

26   attorney Bin Li as custodian, with Defendant staying at attorney Li's

27   residence in Pomona.  Exhibit F. <u>Li</u> at ¶ 5.

28        Pursuant to Judge Fitzgerald's suggestion, Defendant presented
     new circumstances to Pretrial and asked for a recommendation to

Magistrate Donahue Defendant be released on conditions.  This release request was made by counsel to the California Central Pretrial Services on January 14, 2021, Exhibit G, that provided additional fact germane to the likelihood that the government will be unable to prove its substantive case against Defendant. <u>Li</u> at ¶ 6.

The government indicated that the Bureau of Prisons had not responded and the government indicated that it was opposed to release.  Exhibits H and I. <u>Li</u> at ¶ 7.

**C.   Defendant's Sixth Amendment Rights to effective assistance of counsel are continuously infringed by the government's continuing active and passive opposition to release.**

First note that the government has engaged in a discovery document dump: over 37,000 documents have been produced, and this number is expected to rise.  The problems that preceded preparation for the deposition aggravated magnitudes in order worse for trial preparation.  Defense counsel and Defendant have had no opportunity to review these documents together to ascertain relevance or admissibility or weight.  Each one must be reviewed carefully, which is the professional norm for any defense practice, and more so in this case, where the government's case remains murky and driven more by innuendo than facts.  <u>Li</u> at ¶ 8.

Defense counsel has been a trial lawyer for 18 years in civil, criminal and administrative trials.  He has never encountered this kind of passive-aggressive, and effective, interference by the government.  Under the circumstances, it was not possible to adequately prepare for the deposition of the material witness and it is not possible to prepare for trial March 9. 2021. <u>Li</u> at ¶ 9.

Defendant should not have to signpost to the government the particulars of defense counsel's work product thought processes that have been disrupted, sidetracked or otherwise hindered.

Defendant has a Sixth Amendment right to effective assistance of counsel, e.g., <u>Geders v. United States</u>, 425 U.S. 80 (1976), where trial judge improperly barred consultation between defendant and attorney overnight.  In the present case, this has gone on for months (Not being able to meet Defendants for two months since November 16, 2020). <u>Herring v. New York</u>, 422 U.S. 853, 858 (1975). "[T]he right to assistance to counsel has been understood to mean that <u>there can be no restrictions upon the function of counsel in defending a criminal prosecution</u> in accord with the traditions of the adversary factfinding process that has been constitutionalized in the Sixth and Fourteenth Amendments." (emphasis added).  In the instant case, the prosecution has meekly -- and conveniently -- deferred to the decisions or nondecision of the Bureau of Prisons that has prevented effective representation.

Defendant accepts that the MDC believes itself medically unable to accommodate Defendant's Sixth Amendment unrestricted right to effective assistance of counsel when weighed against the safety of other inmates and staff.  Nevertheless, this <u>unrestricted</u> right is not diminished and must be protected.

**D.** **Pretrial release is appropriate and the only way to enforce Defendant's 6th Amendment rights to effective assistance of counsel.**

While the government may not have any particular interest in keeping Defendant alive, protecting Defendant's 6th amendment right to

6

effective assistance of counsel is its obligation, and on a more practical effect, the inevitability of an appeal on this issue if Defendant is convicted.

Defendant requests that the pretrial detention order be rescinded, and Defendant, if testing negative for coronavirus be released to the custody of his attorney, Bin Li, who is fluent in Mandarin and can adequately prepare for trial.

The government has seized Defendant's passport.  Defendant offers a $50,000 appearance bond and any reasonable restriction similar to the conditions given to material witness YANG who is no longer in pretrial detention, including GPS tracking, execution of a Declaration re Passport, and limitation on movement to attorney Li's residence, where Mr. Li will give him room and board during the trial.  Attorney Li agrees execute the affidavit required of a third-party custodian if one is required.

## E.  Other issues Defendant requests the Court to consider.

Defendant should never have been detained pretrial. The gravity of this case is steadily eroding from the government's claim that Defendant engaged in espionage on behalf of the Chinese military. The indictment has been amended to correctly plead that the hard drive destroyed is not an internal hard drive from a computer owned by Defendant, but an external hard drive, which actually belongs to the material witness, Guan's fiancé Zhihui Yang.

Yang's testimony at the deposition on January 7, 2021 was that the contents on the devices are almost all Yang's, and that the forensic test lab further shows that most of the fingerprints are Yang's.

It is not unlawful to destroy a hard drive and it is not unlawful to reset a smartphone and the effort takes no particular expertise or nefarious reason to do either.  Anyone, including people who are not Chinese spies, can manage.  That the government's case is mostly innuendo is shown by admissions made by the government to defense counsel about what might have been on that hard drive.

Government concedes in email correspondence that "Mr. Guan is not charged with accessing confidential or classified information." Further, "The government is presently unaware of any confidential or classified information to which Mr. Guan had access."  Yet the government still maintains that this case is about obstruction of a federal investigation into the transfer of sensitive information to China's National University of Defense Technology.  The material witness is not alleged to have been in possession of sensitive material, and the government concedes that Defendant was not either. If Defendant did not have access to confidential information either through his own efforts or the efforts of third parties, what is this case about? The offense was manufactured by how the FBI characterized Defendant's ambush interrogation.  Invocation of the Classified Information Procedures Act is argument by innuendo.

This case has devolved into a matter that belongs before an Immigration Court of the Executive Office for Immigration Review where, if the government could prove that Defendant lied on a visa application – and it cannot -- the likely punishment would be deportation and ban on further admission to the United States.

The government consistently conflates military training with membership in the Peoples Liberation Army.

Defendant denies being, or having been, a member of the Chinese military.  The government asserts, ipse dixit, that Defendant was

8

enlisted in the Chinese military because he wore a fatigue uniform and had a general officer as his supervisor.

Every citizen in China, including students receives military training as a matter of law.  Law of the People's Republic of China on National Defense Education (Order of the President No.52)[2], a copy of which is attached as Exhibit J.  Article 1 of this law states that the purpose is for, "popularizing and strengthening education in national defense, carrying forward the spirit of patriotism, promoting the building of national defense and furthering socialist cultural and ethical progress."  Every segment of the Chinese population participates.  Li ¶ 10.

For students, this training starts in primary schools, Article 14, for higher education, Article 15.  Nowhere does this law state that citizens so trained are members of the military. That military training is supervised by military officers should be no surprise. But this not therefore indicia that Defendant is an officer of or enlisted in the Peoples Liberation Army.

The law is a cultural and political requirement that superficially resembles a high school student enrolled in the Junior Reserve Officer Training Corps. or a university student member of the ROTC, a student at the Virginia Military Institute or the Citadel or Texas A&M may wear military fatigues and don full dress attire, but like the Chinese students and Defendant, are not members of their country's Armed Forces.

The government's assumptions are aggravated by faulty interpretation of statistical evidence which will be demonstrated at trial by elemental Bayesian and other statistical analysis.

---

[2] http://english.gov.cn/laws/2005-10/10/content_75636.htm

In any event, the government's expert is wrong.  The Chinese Scholarship Council number "0317" the Government used to prove Defendant was a PLA officer only means the school or the type of the school.  Taking Yang's CSC number for example, the first four digit means the year, the second four digit means the university, and the last four digits refer to the student's number.  Yang's CSC code 201806100072 shall be read as Year 2018 Fudan University, Student Number 0072.  See Exhibit K regarding the collaborating report about the CSC Students' numbers. Li at ¶ 10.

The government Australian expert, who offered these numbers, remains, unsurprisingly, unavailable for his own deposition.

Defendant arrived in the United States for post-graduate work at the University of California at Los Angeles in 2018 to study Computational Optimization.  He did not deny being a member of the Chinese Communist Party.  This was three years after the NUDT was placed on the Entity List.  Then on May 29, 2020, President Trump issued Proclamation 10043, Proclamation on the Suspension of Entry as Nonimmigrants of Certain Students and Researchers from the People's Republic of China on national security grounds.

But Defendant's studies involved no access to sensitive information which the government has already admitted, and which will be attested to by Defendant's academic records and supervising professor.  See Interview between FBI Agent and Professor Yin and Declarations of Professor Wuotao Yin and Exhibit L.  Li at ¶ 11. What Defendant researched on topics assigned to him by Professor Yin, which the government gave its tacit assent to by issuance of the J Visa years **after** NUDT was blacklisted. Defendant was the third student from NUDT granted visa by US Government to do research or study under Professor Yin at UCLA.

The government is using Proclamation 10043 as a convenient basis for prosecution of Defendant under what is in effect an ex post facto law.

The government did not revoke Defendant's J Visa under Proclamation 10043 as it did for many other students. Defendant finished his course of studies and his J Visa accordingly expired. Having no right to remain in the United States without a valid visa, Defendant was required by law to return to China.  Defendant and YANG had already made wedding plans on their return.  The U.S. Attorney proclaims Defendant's booking of a flight to leave the country as "fleeing," using this histrionic and innuendo-laden word to imply Defendant's knowledge of guilt and an attempt to escape justice.  But the government is wrong.  The United States Citizenship and Immigration Services describes departing after a visa expires as "not overstaying" or "not having an unlawful presence" that is both illegal and could lead to deportation and a bar from returning to the United States under Immigration and Nationality Act § 222(g).

For the reasons above stated in order to protect Defendant's Sixth Amendment rights and in the interests of humanity, the best and most equitable action would be to release Defendant from pretrial detention.


Respectfully submitted,


Dated:  January 19, 2020

                    LAW OFFICES OF BIN LI, PLC

                    /s/ Bin Li/
                    Bin Li, Esq.
                    Attorney for Defendant
                    Guan Lei

11