TRACY L. WILKISON
Acting United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
WILLIAM M. ROLLINS (Cal. Bar No. 287007)
GEORGE E. PENCE (Cal Bar No. 257595)
Assistant United States Attorney
Terrorism and Export Crimes Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-7407/2253
     Facsimile: (213) 894-2927
     E-mail:    william.rollins@usdoj.gov
                george.pence@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>GUAN LEI,<br><br>    Defendant. | No. CR 20-127-MWF<br><br>GOVERNMENT'S OPPOSITION TO MATERIAL WITNESS ZHIHUI YANG'S MOTION FOR RELEASE FROM DESIGNATION AS MATERIAL WITNESS; FOR RELEASE FROM BOND ASSOCIATED WITH THAT DESIGNATION; AND FOR RETURN OF PASSPORT |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys William M. Rollins and George E. Pence, hereby files this Opposition to Material Witness ZHIHUI YANG's Motion for Release from Designation as Material Witness, Release from Bond Associated with that Designation, and for Return of Passport. This Opposition is based upon the attached

//

memorandum of points and authorities, the attached declaration and exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 4, 2021         Respectfully submitted,

                                          TRACY L. WILKISON
                                        Acting United States Attorney

                                        CHRISTOPHER D. GRIGG
                                        Assistant United States Attorney
                                        Chief, National Security Division

                                                  /s/
                                        WILLIAM M. ROLLINS
                                        GEORGE E. PENCE
                                        Assistant United States Attorneys

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

ZHIHUI YANG ("YANG") is a crucial witness whose credibility is likely to become a central and disputed issue at trial.  Her testimony is the lynchpin of defendant Guan Lei's ("defendant") argument that he did not intend to obstruct a federal investigation when he destroyed and discarded the hard drive FBI agents later recovered from a dumpster outside his apartment.  She is not an ancillary witness or one whose testimony is of speculative value.  To evaluate her credibility, jurors must assess YANG's "manner while testifying."  9th Cir. Model Crim. Jury Instr. 1.7; see also United States v. Ramirez-Rodriquez, 552 F.2d 883, 884 (9th Cir. 1977) ("[i]t is the exclusive function of the jury to weigh the credibility of witnesses[.]").  The Court would be well within its discretion in ruling that, in light of the significance of YANG's testimony and despite the parties' and the Court's best efforts to preserve it by deposition, the jury should be permitted to observe that testimony live and in-person to prevent a failure of justice.

Moreover, as detailed below, the government's opposition to YANG's motion is also based on its desire that the record be crystal clear that it made all reasonable efforts to secure her testimony by legal process or other means, and that if she ultimately becomes unavailable as a witness at trial, her unavailability will arise despite, not due to, the government's conduct.[1]

---

[1] In her motion for release, YANG omitted one of the primary reasons the government opposed her request before it was filed: the two-step deposition process adopted by the Court was not yet complete. (Rollins Decl. ¶ 4, Ex. 3.)  Although the government will continue to produce discovery as it becomes available and as required
*(footnote cont'd on next page)*

## II. ARGUMENT

### A. The Jury Should Observe YANG's Testimony Live and In-Person to Prevent a Failure of Justice

Live witness testimony, especially of essential witnesses, in criminal trials is preferred.  Although the law provides for the release of material witness who have been deposed in criminal matters (including, for example, grand jury witnesses who may testify years before charges are ever brought), the statute requires release only if the deposition "adequately" secures the witness's testimony, and only if "further detention is not necessary to prevent a failure of justice[.]"  18 U.S.C. § 3144.  In other words, even after a criminal deposition occurs, the statute provides courts with flexibility to secure the appearance of key trial witnesses, if necessary.  Indeed, federal courts of appeal have repeatedly affirmed that live testimony in criminal trials is preferred and the use of depositions is disfavored:

> Attendance of witnesses at trial . . . is the favored method of presenting testimony, and primarily for this reason depositions are not favored in criminal cases.  The antipathy to depositions is due in large part to the desirability of having the factfinder observe witness demeanor.  Although this concern has been alleviated to a marked degree by the advent of modern audio-visual technology, the policy in favor of having the witness personally present persists.

United States v. Wilson, 601 F.2d 95, 97 (3d Cir. 1979); see also United States v. Drogoul, 1 F.3d 1546, 1551-52 (11th Cir. 1993) (depositions disfavored due to "factfinder's usual inability to observe the demeanor of deposition witnesses"); United States v. Milian-Rodriguez, 828 F.2d 679, 686 (11th Cir. 1987) ("The decision

---

by the Court and all applicable rules, the government understands that the two-step process initially contemplated by the Court has concluded.  (CR 138 & 138.)

2

whether to allow . . . depositions is committed to the discretion of the district court, but the use of depositions in criminal cases is not favored because the factfinder does not have an opportunity to observe the witness'[s] demeanor.").

Now that YANG's deposition is complete, the importance of allowing jurors to assess her credibility and demeanor at trial is plain. At her deposition, YANG made a variety of contradictory, vague, and dubious statements that go to the core of the charges against defendant. As government counsel recall,[2] she testified (in essence) that defendant destroyed a hard drive and threw it into a dumpster not because he wanted to interfere with a federal investigation or the work of FBI agents who had recently asked for permission to search his digital devices, but because the hard drive contained her personal data and she was not strong enough to destroy it herself. But at various points in her deposition, YANG also testified that:

- She could not remember whether she told defendant to destroy the hard drive before or after the FBI visited their apartment, roughly six days earlier.
- She could not remember whether she told defendant to destroy the hard drive before or after defendant was prevented from leaving the country (also roughly six days earlier).

---

[2] The government was still awaiting a copy of the second day of YANG's deposition transcript at the time of the filing deadline. Accordingly, if YANG or defendant dispute the characterization of her testimony of believe YANG made other conflicting statements, the government asks that they attach the entire transcript – not merely excerpts thereof – for the Court to review and the government to cite in any surreply, if necessary.

3

- She could not explain why defendant threw the hard drive away in a trash dumpster several hundred yards away from their own apartment unit (during which time FBI surveillance personnel are expected to testify that YANG accompanied defendant) or why he concealed the hard drive in his sock before doing so.
- She could not recognize a photograph of the People's Republic of China's ("PRC") consulate in Los Angeles, which she visited with defendant in early July.
- She could not remember whether consular officials told defendant to delete data on his digital devices before he left the United States.

As the Ninth Circuit has observed, "[l]awyers in criminal cases, for prosecution and defense, sometimes swim in a sea of lies, and must necessarily trust the jury to determine what is true, or whether reasonable doubt remains about what is true." See United States v. Zuno-Arce, 44 F.3d 1420, 1423 (9th Cir. 1995). In this case, YANG presents as precisely the sort of witness the jury should observe live and in-person, so that it can more readily assess her demeanor, tone, evasiveness, and, ultimately, her credibility.

YANG's appearance at trial is also warranted because the COVID-19 protocols in place during the deposition may hinder the jury's ability to make a fulsome evaluation of her credibility. YANG wore a face mask, potentially obscuring her demeanor; numerous exhibits were published without being admitted, conditionally or otherwise, and referenced as if they were before the jury, which they may not be if and when the deposition is played; some objections were noted without being ruled upon; YANG later sought to correct her testimony through

4

an errata sheet that purports to call into question not only the accuracy of the transcription but also of the interpretation (Rollins Decl., ¶ 6 Ex. 5);[3] and defense counsel likewise repeatedly challenged those interpretations, and has reserved his objections thereto. Excerpted video clips reflecting the Court's ultimate rulings on which portions of YANG's testimony are admissible could also make the jury's task of evaluating her credibility more difficult.

Moreover, after the deposition, defense counsel proffered a new defense theory that, if presented at trial, could require further inquiry of YANG. Counsel hinted that part of the defense may focus on the FBI's DNA analysis of the destroyed hard drive or digital devices found in defendant and YANG's shared apartment. (Id. Ex. 2.) Although this new focus is not entirely clear to the government, it may be that defendant will seek at trial to present evidence that it was actually YANG (and not defendant) who destroyed the hard drive and intended to obstruct an FBI investigation. In the event the defense takes this tack or any similar one, the government would be left without the ability to further question YANG or call her in a rebuttal case. These additional issues weigh in favor of requiring YANG's live testimony at trial given her claims during the deposition.

In preparing to draft this opposition, the government asked YANG's counsel whether YANG was subpoenaed to testify at trial by defendant, and whether YANG would be willing to return to the United

---

[3] In YANG's errata sheet, she claims that some of her responses should be changed to the opposite of what was apparently recorded in the transcript. See Ex. 5 at 3 (indicating that "can't" should be changed to "can" and that "I'm not sure" should replace "I'm sure.")

5

States voluntarily for trial if subpoenaed by either party.  YANG's counsel did not respond to those questions.  (Id. Ex. 3.)  In response to similar questions posed by the government, defense counsel responded that defendant had neither subpoenaed YANG nor asked her to attend the trial and that defendant's counsel did not anticipate that "her family would . . . let her come to LA."  (Id. Ex. 1.)  Thus, if YANG's bond is exonerated and she is de-designated as a material witness, it is a virtual certainty that she will depart for the PRC and not return for trial.  Under these unique circumstances, the Court would be well within its discretion in ruling that YANG's presence at trial is necessary to prevent a failure of justice.

> **B. The Government Has Consistently Sought to Secure YANG's Attendance at Trial**

The government recognizes that requiring YANG to remain in the United States imposes a substantial burden on her, that she has not been charged with any crime, that she has few connections to this district, and that she hopes to resume her studies in the PRC without delay.  The government's opposition to YANG's motion is not borne of ill-will toward her or the government's desire to increase her burden.  Instead, that opposition is firmly rooted in the law, the Federal Rules of Evidence, and its commitment to presenting a full and accurate case to the jury as the trial unfolds.

If YANG ultimately becomes unavailable as a witness, the record should be clear that the government satisfied the legal prerequisites necessary to seek to admit her hearsay deposition testimony in whole or in part.  See Fed. R. Evid. 804(a)(5)(A) (party seeking to admit former testimony must first establish that it has "not been able, by

6

process or other reasonable means, to procure . . . the declarant's attendance"). Throughout these proceedings, the government has consistently availed itself of legal process and other reasonable means to secure her attendance at trial:  it requested that YANG be designated as a material witness (CR 7); it requested her detention after she attempted to flee (CR 14); it served YANG with a trial subpoena (id. Ex. 4);[4] it opposed YANG's request to be deposed, which it (correctly) understood as the initial step in YANG's plan to argue that she should be permitted to return to the PRC before trial (CR 50); and it now opposes her request to no longer be designated as a material witness and for exoneration of bond.  The government has thus made every effort to secure YANG's attendance at trial "by process or other reasonable means."  Fed. R. Evid. 804(a)(5)(A).

Meanwhile, despite defendant telling this Court that he views YANG's claims as "exculpatory" (CR 111 at 6) – and despite defendant's lawyers meeting with YANG in advance (and speaking with YANG in between the first and second days) of the Rule 15 deposition – defendant has made no efforts whatsoever to secure her presence at trial.[5]  Defendant has not served YANG with a trial subpoena (Ex. 1);

---

[4] If YANG's motion is granted, the government intends to again serve her, through counsel, with a trial subpoena, despite its doubts that she would comply.

[5] Ordinarily, a defendant in a criminal case would need to establish "exceptional circumstances" to obtain a Rule 15 deposition of his or her witness before trial. United States v. Olafson, 213 F.3d 435, 442 (9th Cir. 2000).  Rule 15(a) was amended on December 1, 2002, and was separated into its two subsections, (a) and (b). "The amendment makes clear that this heightened [exceptional circumstances] standard only applies to a motion made by **a party**." United States v. Chen, 214 F.R.D. 578, 580, n.2 (N.D. Cal. 2003) (emphasis in original).  While lowering the burden required for neutral, non-party material witnesses to be deposed and released in

*(footnote cont'd on next page)*

he did not apply for her to be deposed; and he does not oppose the present motion for her to be released and allowed to return to the PRC, even though he told this Court in separate briefing that COVID-19 made it impossible for him to adequately prepare for YANG's deposition.  (CR 125 at 4, 5, 7.)

Nevertheless, in an attempt to narrow the issues for the Court to resolve, the government asked defense counsel to confirm whether defendant would in fact call YANG as a trial witness.  Defense counsel declined to do so and informed the government that, "if she were called," he would simply rely on the recorded deposition for her testimony.  The government also proposed a stipulation that called upon defendant to waive any objection he might have to the introduction of that testimony by the government on hearsay grounds or under the Sixth Amendment to the United States Constitution.  (Rollins Decl. ¶ 2, Ex. 1).  Defense counsel declined to sign that stipulation, though he did represent by email that defendant would "not object to the admission of the transcripts and videos based on her unavailability if she is released to return home."  (Id.) "Unavailability," however, is not the only objection or issue that may arise from the use of YANG's deposition at trial (in lieu of live testimony) in this particular case.  In any event, the government respectfully submits that it has made every effort to secure YANG's

---

most criminal cases may make sense, the rationale for pretrial release loses force here, where YANG is closely aligned with defendant, met with defendant's lawyers to prepare for her deposition, met with defendant's lawyers in between the first and second day of her deposition, the trial date is looming, and defendant has repeatedly hinted that he intends to rely on her "exculpatory" testimony in support of his defense.

8

attendance "by process or other reasonable means." Fed. R. Evid. 804(a)(5)(A).

**III. CONCLUSION**

For the reasons set forth above, YANG is a crucial witness whose credibility should be assessed by the jury in-person at defendant's trial. Defense counsel's vague email representations were and remain insufficient to assure the government that YANG's deposition will be an adequate substitute for the jury, or that, as defendant's trial strategy may evolve, he might not change his mind regarding her deposition altogether (particularly given his claims that he could not adequately prepare for the deposition in light of COVID-19), or that further testimony from YANG about as-yet undisclosed defenses or theories might become necessary. The government therefore respectfully requests that the Court deny YANG's motion.

Dated: February 4, 2021         Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division


      /s/
WILLIAM M. ROLLINS
GEORGE E. PENCE
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

9