

# United States Department of Justice

## United States Attorney's Office
## Central District of California

*William M. Rollins*

1500 United States Courthouse
312 North Spring Street
Los Angeles, California  90012

*George E. Pence*

October 22, 2020

**VIA E-MAIL**

Michael A. Schachter
Deputy Federal Public Defender
Office of the Federal Public Defender
Central District of California

    Re:    <u>United States v. Guan Lei</u>,
               CR 20-127-MWF

Dear Counsel:

       The government hereby provides notice, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), that the government intends to use the testimony of the following witnesses under Federal Rules of Evidence 602, 702, 703, and/or 705.  While the testimony of some of these witnesses may be factual, rather than opinion, we expect their testimony will, at least in part, rely on their specialized knowledge, training, experience, and expertise.  Therefore, the government is providing notice of their proposed testimony at this time out of an abundance of caution, in the event that the proposed testimony may be construed to qualify as expert testimony.

       The government also hereby gives notice that it may seek to introduce evidence described below on the theory that it is inextricably intertwined with the charged conduct, or pursuant to Rules 404(b), 608, and/or 609 of the Federal Rules of Evidence.

RE:  United States v. Guan Lei, CR 20-127-MWF
October 22, 2020
Page 2

### The People's Republic of China's ("PRC") National University of Defense Technology ("NUDT")

The government expects that one or more expert witnesses will testify based on their training, experience, and review of materials relied on by experts in the field as follows:  In 1999, the PRC's Central Military Commission ("CMC") designated five PLA-affiliated universities as "comprehensive" universities with research and education programs in a wide variety of areas, and among those universities was NUDT, which the CMC oversees.  NUDT is home to advanced teaching and research laboratories, such as state key labs, national defense science and technology key labs, and national experimental teaching demonstration centers.

NUDT is the main source of PLA scientists studying abroad.  By 2013, NUDT sent more than 1,600 scientists overseas as students or visiting scholars, including roughly a third of its PhD scholars.  NUDT receives significant funding from the PRC government to send graduate students abroad.

NUDT students permitted to study overseas go through intensive training prior to their departure.  Alongside academic credentials, political credentials are also of key importance for military scientists hoping to study abroad.  NUDT appears to sponsor only Chinese Communist Party ("CCP") members for overseas study and works hard to maintain their loyalty to the party.  Online communication forms an important part of PLA efforts to maintain discipline among overseas personnel and is complemented by in-person contact.  Regulations on the political education of overseas NUDT students include provisions for overseas inspection and for students to return to China in the middle of their study for remedial education.

The close watch that the PLA keeps on its overseas scientists helps ensure that all those sent abroad return to the Chinese military.  NUDT, for example, requires that those applying to study abroad show their intent to return to serve the construction of the nation, national defense, and the military, and NUDT students sent abroad are often expected to become key parts of PLA units upon returning to China.

While most scientists sent abroad by the PLA appear to be open about which institutions they come from, there are some instances in which PLA scientists travelling abroad using cover to obscure their military affiliations.  For example, NUDT has advised students that when they provide documentation in their applications to foreign institutions, military and political courses can be excluded from their academic records.

One of defendant's advisors at NUDT – Xicheng Lu ("Lu") – is an expert in computer science and previously researched the Galaxy series of giant computers made by NUDT.  Lu has served as the president of NUDT's Institute of Computers, deputy director of the PLA General Armament Department's Science & Technology Committee, and was in charge of successful development of the Galaxy II high speed internet software system.  The Galaxy computers have been used in PLA General Staff Department, PLA General Armament Department, Air Force, military weather forecasts, and nuclear technology.

The NUDT supercomputer programs have been used in connection with nuclear weapons testing.  In 2015, the U.S. Department of Commerce placed NUDT on the Entity List for

RE:  United States v. Guan Lei, CR 20-127-MWF
October 22, 2020
Page 3

acquiring U.S.-origin parts to develop supercomputers used in connection with "nuclear explosive" activities.

### The PRC's Military-Civil Fusion Strategy and the CCP

The government experts that one or more expert witnesses will testify based on their training, experience, and review of open-source materials relied upon by experts in the field as follows:  Military-Civil Fusion ("MCF") is a national strategy of the CCP to develop the PLA into a "world class military" by 2049.  Under MCF, the CCP is acquiring the intellectual property, key research, and technological advances of the world's citizens, researchers, scholars, and private industry in order to advance the CCP's military aims. The CCP is systematically reorganizing Chinese science and technology enterprises and institutions to ensure that new innovations simultaneously advance economic and military development.

The CCP sees MCF as critical to advancing its regional and global ambitions. It believes that artificial intelligence ("AI") will drive the next revolution in military affairs, and that the first country to apply AI to next generation warfare will achieve military dominance. MCF aims to pave the way for the PRC to be the first country to transition to "intelligent warfare," and therefore develop the military capabilities it sees as critical to achieving these goals.

The CCP is developing and acquiring key technologies through licit and illicit means. These include investment in private industries, talent recruitment programs, directing academic and research collaboration to military gain, forced technology transfer, intelligence gathering, and outright theft. The CCP's MCF strategy allows a growing number of civilian enterprises and entities to undertake classified military R&D and weapons production. The CCP also exploits the open and transparent nature of the global research enterprise to bolster its own military capabilities through bodies like the China Scholarship Council ("CSC"), which requires academic scholarship recipients to report on their overseas research to PRC diplomats.

The CSC is responsible for the enrollment and administration of Chinese Government Scholarship programs and provides funding for both undergraduate and graduate students, as well as post-doctoral visiting scholars, to Chinese citizens wishing to study abroad and to foreign citizens wishing to study in China.  CSC is financed mainly by the state's special appropriations or scholarship programs.

### CSC Codes and PLA or "Cadre" Designations

The government expects that Alex Joske, an Analyst at the Australian Strategic Policy Institute, will testify based on his academic background, research, and specialized knowledge and expertise that the CSC regularly publishes lists of persons who are awarded CSC scholarships and the lists include a code associated with each scholarship recipient.  By comparing approximately eight years' worth (2010-2018) of those lists to include approximately three dozen CSC scholarship winners designated with the "0317" code) against publicly-available academic work or other websites in China, Joske determined that "0317" was designated to PLA officers or "cadre," both of which are uniformed Chinese military personnel. Additional details regarding Mr. Joske and his academic work related to the PLA, NUDT, and

RE:  United States v. Guan Lei, CR 20-127-MWF
October 22, 2020
Page 4

other PRC military institutions are available here (https://www.aspi.org.au/bio/alex-joske) and here (https://www.aspi.org.au/report/picking-flowers-making-honey).

### Artificial Intelligence and GUAN's Published Research

The government expects that an expert witness will offer opinion testimony based on their training, experience, and review of open-source materials relied upon by experts in the field, to aid the jury's understanding of Artificial Intelligence and defendant's research.  The expert is expected to describe optimization algorithms and their applications in machine learning, as well as how efficient optimization algorithms are oriented to large scale machine learning problems.

The expert is also expected to offer testimony about the ways in which a Graphics Processing Unit ("GPU") machine can be used to complete research on deep neural networks and in a "pipeline" fashion, otherwise described as the simultaneous use of multiple GPU's working together to increase efficiency.  As you know, defendant acknowledged engaging in this type of work while at UCLA.

The expert witness is expected to opine that this type of research has both military and non-military applications.  For example, GPU advancements are used in intelligence, surveillance, and reconnaissance applications such as wide-area persistent surveillance, hyperspectral sensor fusion, improvised-explosive device detection, and synthetic aperture radar processing.  GPU technology can also be used to validate the effectiveness of hypervelocity kinetic impact and nuclear subsurface explosions.   GPU technology also has a variety of civilian uses, ranging from videogames to astronomy to medical imaging.

### Timothy Hurt, Special Agent, Federal Bureau of Investigation

The government expects that Special Agent ("SA") Timothy Hurt will testify about his interview with defendant and his examination of items seized from defendant's emails and digital devices in this case, among other topics.  Although the government believes his testimony will be factual, rather than opinion, we expect his testimony will, at least in part, rely on his specialized knowledge, training, and experience, and therefore we provide this notice in an abundance of caution.  SA Hurt's training and experience are summarized below.

SA Hurt has been employed as a Special Agent with the Federal Bureau of Investigation ("FBI") since 2016 and is currently assigned to the Los Angeles Field Office.  SA Hurt has been involved in investigating, among other violations, visa fraud, the destruction of evidence, conspiracy, the theft of trade secrets, the illegal export of dual-use items (meaning items that have both military and commercial applications) and strategic technology commodities from the United States, and the illegal export of defense articles and other technology.  SA Hurt attended 21 weeks of New Agent Training at the FBI Academy in Quantico, Virginia, and he has also received training in identifying the techniques, methods, and procedures used by foreign governments, groups, organizations, companies, and individuals to engage in visa fraud, destroy evidence, and attempt to export items and information in violation of United States export laws.  As an FBI agent, SA Hurt received both formal and informal training concerning foreign militaries and their organization, to include the PLA and PRC, as well as training in the

RE:  United States v. Guan Lei, CR 20-127-MWF
October 22, 2020
Page 5

examination of digital devices and digital device networks.  Before joining the FBI, SA Hurt collectively served for four years in the United States Air Force and United States Air Force National Guard.

Based on his experience investigating the suspected transfer of sensitive software and technical data from the United States to the PRC, SA Hurt is familiar with the tactics and methods used by individuals who attempt to transfer U.S. technology overseas.  In addition, SA Hurt has received training in, participated in numerous investigations involving, and consulted with other agents experienced in, materials held by internet service providers.

### U.S. Visa Process

The government anticipates that a representative from the State Department will testify regarding the procedures and requirements to apply for and obtain a Visa to travel from the PRC to the United States.  Although the government believes the witness's testimony will be factual, rather than opinion, we expect the witness's testimony will, at least in part, rely on the witness's specialized knowledge, training, and experience, and therefore we provide notice in an abundance of caution.

The witness is expected to testify that an individual who wants to travel from the PRC to the United States must submit a Visa application and supporting documents and/or other information to the State Department, under the obligation to be truthful, including with respect to their background (including their military service), purposes for travel, and their employers, affiliates, and contact information both in their home country and in the United States.  This anticipated testimony is relevant to Visa applications submitted by defendant and his girlfriend.

It is expected that the bases and reasons for the witness's testimony and any opinions will be the witness's experience and familiarity with the practices and procedures regarding obtaining a Visa to travel from the PRC to the United States, and the witness's review of certain Visa application records.  The government will supplement this notice in the future with additional information regarding the witness.

### Translators

To the extent that translators can be considered expert witnesses, and to the extent that the parties do not enter into stipulations to the accuracy of the translations, the government anticipates that one or more translators will testify that the finalized English-language translations of documents and recordings admitted into evidence in this case are true and accurate translations of the underlying Chinese-language material.  The translator's opinions will be based on his or her review of the underlying foreign-language material, her consultation with dictionaries and other sources typically used by translators, and his or her education, training, and experience.  The government will supplement this notice in the future with additional details regarding the translators who will testify at trial.

RE:  United States v. Guan Lei, CR 20-127-MWF
October 22, 2020
Page 6

### Damaged Hard Drive

The government expects an FBI computer scientist to testify based on his training and experience that the hard drive seized from the trash dumpster outside your client's apartment by FBI employees on July 25 was irreparably damaged and that all previous data associated with the hard drive appears to have been removed deliberately and by force.  In particular, the FBI computer scientist is expected to opine that in order to access this type of hard drive's platters, which stored the hard drive's data, the platters must be accessed from the top of the hard drive chassis, rather than by force through the bottom of the hard drive chassis.  The top of the hard drive chassis had "torx" screws to remove the cover, which would provide access to the hard drive's platters.

In this case, the top of the recovered hard drive still had all of the torx screws in place, with one appearing to be stripped.  The printed circuit board ("PCB") on the bottom of the hard drive was removed by force, leaving only a small portion of it attached to the PCB connection point.  The connection point on the bottom still had the torx screws in place, indicating that whoever destroyed the hard drive did not have access to the correct torx screw driver or was in a circumstance that did not allow for it.  After removing the PCB, whoever destroyed the hard drive would have gained access to the platters and spindle by forcefully prying, cutting, or breaking the aluminum casing.  The platters were then removed, which could have been easily shattered.  There would be no data left on the recovered hard drive.  Additionally, the label on the top of the hard drive was removed, which would have had the product information.  The label is typically not removed by hard drive technicians, because it is a quality control measure.  Hard drive technicians normally access the screws under the part sticker by puncturing the sticker.  The technicians then usually leave a label indicating that a certified technician accessed the hard drive.   In light of the foregoing facts, the FBI computer scientist's opinion is that the recovered hard drive appears to have been intentionally destroyed by someone who wanted to ensure that no data could ever be recovered from the device.

### DNA Expert

The government expects that Tiffany Smith, an analyst at the FBI's DNA laboratory in Quantico, Virginia, will testify about DNA found on the hard drive seized from the dumpster outside defendant's apartment.  The methodology and bases for Ms. Smith's opinions are described in further detail in the DNA laboratory report that has been produced to you in discovery in this case.

As detailed further in her report, Ms. Smith is expected to opine that the damaged hard drive contained male DNA and was interpreted as originating from two individuals, although "[t]he presence of male DNA in a mixture may limit the ability to determine if female DNA is also present in that mixture."  While there was limited support for excluding defendant's girlfriend, Yang Zhihui, as a contributor to DNA on the hard drive, Ms. Smith is expected to opine that it is 60 times more likely that defendant and an unknown, unrelated person are contributors than if two unknown, unrelated people are contributors.  Thus, Ms. Smith will offer the opinion that there is limited support for including defendant as a contributor of DNA to the damaged hard drive.

RE:  United States v. Guan Lei, CR 20-127-MWF
October 22, 2020
Page 7

### Digital Devices, Federal Bureau of Investigation Forensic Examiners

In the event that the government is unable to reach appropriate stipulations with the defense, the government anticipates calling multiple FBI personnel to assist in laying the appropriate foundations for admissibility of materials found on the digital devices seized pursuant to the search warrants executed in this case.  Additionally, while the government does not believe testimony of these witnesses falls within the scope of Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure or Rule 702 of the Federal Rules of Evidence, the government is nonetheless providing this disclosure in an abundance of caution, in the event that the proposed testimony may be construed to qualify as expert testimony.

The government expects these witnesses will testify regarding the FBI's procedures and methods related to computer forensics, the imaging and duplication of data storage devices, the processing of device images with forensic tools, verifying the process of imaging and copying, providing agents with access to an exact copy of the original devices, and extracting specific portions of forensic copies at the request of agents.  Specifically, the witnesses will testify about the examinations of certain digital devices including computers, cellular telephones, and other storage media obtained from defendant, his girlfriend, and their apartment(s).  The witnesses will also identify items of evidence recovered during these examinations.  The government expects that at least one forensic examiner witness will discuss the nature and structure of computer file systems and file storage structures (i.e. folders and directory trees) as they relate to the locations where files were stored on a digital device.

### Revision and Supplementation of This Notice

The government reserves the right to revise and supplement this notice, and to give advance notice of additional expert witnesses whom it intends to call at trial.

### Request for Reciprocal Discovery

With this letter, the government requests all reciprocal discovery to which it is entitled under Rules 16(b) and 26.2 of the Federal Rules of Criminal Procedure.  The government also requests notice of any intention of your client to rely on an entrapment defense, or a defense involving mental condition or duress, and/or an alibi defense.  Pursuant to Federal Rule of Criminal Procedure 12.1, the dates, times, and places of the charged offenses are detailed within the documents included within the discovery.  Please contact me immediately if you believe that this notice is insufficient.

Very truly yours,

*/s/ William M. Rollins*

William M. Rollins
Assistant United States Attorney
National Security Division