

# United States Department of Justice

## United States Attorney's Office
## Central District of California

*William M. Rollins*

▉

*George E. Pence*

▉

1500 United States Courthouse
312 North Spring Street
Los Angeles, California 90012

February 12, 2021

**VIA E-MAIL**

Bin Li
Law Offices of Bin Li and Associates

▉

Harland Braun
Braun & Braun LLP

▉

Re:   United States v. Guan Lei,
      CR 20-127-MWF

Dear Counsel:

The government hereby supplements its previous notices dated October 22, 2020 and October 29, 2020 (the "Original Notices") as follows:  Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), the government intends to introduce the testimony of the witnesses identified in the Original Notices and further identified in this Supplemental Notice under Federal Rules of Evidence 602, 702, 703, and/or 705 and on the theory that their testimony is inextricably intertwined with the charged conduct, or pursuant to Rule 404(b), 608, and/or 609 of the Federal Rules of Evidence.  While the testimony of some of these witnesses may be factual, rather than opinion, we expect their testimony may, at least in part, rely on their specialized knowledge, training, experience, and expertise.  Therefore, the government is providing notice of their proposed testimony at this time out of an abundance of caution, in the event that the proposed testimony may be construed to qualify as expert testimony.

### The People's Republic of China's ("PRC") National University of Defense Technology ("NUDT"), the PRC's Military-Civil Fusion Strategy, and the CCP

The government expects that Dr. Glen Tiffert, a research fellow at Stanford University's Hoover Institution, will testify about the PRC, NUDT, and the PRC's military-civil fusion strategy.

RE:  United States v. Guan Lei, CR 20-127-MWF
February 12, 2021
Page 2


Dr. Tiffert is expected to testify that NUDT is similar to the Seven Sons institutions in the PRC, which had their origins in the People's Liberation Army and were established for civil-military fusion.  The job of the Seven Sons was to churn out research and technology for the PLA.  Seven Sons post-doctoral scholars in the U.S. have become a bridge for technology advancement at the Seven Sons, and American universities tended to be clueless about it. These institutions were originally only military but now were both military and civilian, and they often work side-by-side with the military.

Dr. Tiffert is expected to describe general enrollment policies at the National University of Defense Technology, and the general services NUDT provides to the PLA and the military-industrial sector.  Additionally, Dr. Tiffert is expected to testify that a student's status as a cadet, active duty, civilian, or technical rank non-command military may depend on the age of the student at the time he or she enrolls in a particular graduate program at NUDT.  Dr. Tiffert is also expected to describe some of the reasons that students at PLA universities might wear military uniforms, including their status as cadets, requirements for military training of even non-military students, or active-duty status. Dr. Tiffert will also opine that everyone in China is not required to undergo military training.  Band and medical fields are often military, just not front line. The PRC also does not have a hard and fast civilian distinction.  Dr. Tiffert is expected opine that defendant's advisor for his master's degree thesis is a member of the PLA.  Dr. Tiffert's CV, which describes his training, education, and experience providing bases for the testimony the government expects him to provide, is also attached.

We expect that Dr. Tiffert's testimony will be part of, or is inextricably intertwined with, the charged conduct in this case.  Dr. Tiffert's testimony is also expected to establish that defendant had a motive to lie on his visa application and conceal his PLA affiliation or contacts, to destroy a hard drive, and to lie to the FBI and CBP during his July 2020 interviews – as well as to prove the absence of a mistake or accident.

**NUDT's Placement on the Commerce Department's Entity List**

The government expects that an employee of the U.S. Department of Commerce ("DOC"), or another federal agent with comparable training and experience, such as Special Agent Hurt from the FBI (whose qualifications, training, and experience were further described in our October 22, 2020 disclosure letter), will testify about the DOC's Entity List.  In particular, the employee is expected to testify that the DOC's Bureau of Industry and Security publishes the names of certain foreign persons – including businesses, research institutions, government and private organizations, individuals, and other types of legal persons – that are subject to specific license requirements for the export, reexport and/or transfer (in-country) of specified items.  These persons comprise the Entity List, which is found at Supplement No. 4 to Part 744 of the Export Administration Regulations ("EAR").  The persons on the Entity List are subject to individual licensing requirements and policies supplemental to those found elsewhere in the EAR.

The witness is further expected to testify that, in 2015, NUDT was placed on the Commerce Department's Entity List for nuclear nonproliferation reasons related to the use of NUDT's Tianhe 1 & 2 supercomputers.  Specifically, the witness will explain that, according to

RE: United States v. Guan Lei, CR 20-127-MWF
February 12, 2021
Page 3

the Federal Register, "NUDT has used U.S.-origin multicores, boards, and (co)processors to produce the TianHe-1A and TianHe-2 supercomputers located at the National Supercomputing Centers in Changsha, Guangzhou, and Tianjin," and "[t]he TianHe-1A and TianHe-2 supercomputers are believed to be used in nuclear explosive activities as described in § 744.2(a) of the [Export Administration Regulations ("EAR")]." See 80 Fed. Reg. 8524 (February 18, 2015).

We expect that the testimony about NUDT's placement on the entity list will tend to prove that defendant was a member of the PLA; the testimony is thus part of, or inextricably intertwined with, the charged conduct in this case. The testimony is also expected to establish that defendant had a motive to lie on his visa application and conceal his PLA affiliation, to destroy a hard drive, and to lie to the FBI (including, for example, when defendant indicated he was not aware of U.S. government restrictions on NUDT but had previously emailed the consulate about his university being placed on a "black list") and CBP during his July 2020 interviews – as well as to prove the absence of a mistake or accident.

**Machine Learning and Artificial Intelligence ("AI")**

The government expects that Lieutenant Colonel Isaac Faber, Ph.D., a chief data scientist and statistician at the United States Army AI Task Force, Army Futures Command, will offer expert opinion testimony about the nature of defendant's and his advisors' research and applications for artificial intelligence and machine learning – two subjects that, as you know, defendant indicated were the focus of his studies at NUDT and UCLA and that we previously referenced in our October 22, 2020 expert notice (pp. 4). Lt. Col. Faber earned his PhD in cyber security from Stanford University; his CV is attached to this Notice.

We expect that Colonel Faber's testimony will also tend to prove that defendant was a member of the PLA; Colonel Faber's evidence is thus part of, or inextricably intertwined with, the charged conduct in this case. Colonel Faber's testimony is also expected to establish that defendant had a motive to lie on his visa application, to lie to the FBI and CBP during his July 2020 interviews, to destroy a hard drive, and to prove the absence of a mistake or accident.

**Fingerprint Expert**

The government expects that FBI physical scientist and forensic examiner Icel M. Kuznetsova may testify regarding the processes for the detection of latent prints, and the comparison of those latent prints to the prints of known individuals. The results of Examiner Kuznetsova's analyses – and the bases for her conclusions – were previously provided to you in discovery on December 7, 2020 at GUAN_00034700 to GUAN_00035264.

Examiner Kuznetsova is also expected to testify that the absence of latent fingerprints on the destroyed Western Digital hard drive and the Lenovo laptop in this case may be due to a number of reasons. For example, fingerprint residue may not absorb into smooth surfaces and are easy to wipe off. In addition, Examiner Kuznetsova is expected to opine that certain materials, such as a napkin or a sock, could have absorbed fingerprint residue before the hard drive was found in the dumpster. Examiner Kuznetsova's CV was produced on December 7,

RE:  United States v. Guan Lei, CR 20-127-MWF
February 12, 2021
Page 4

2020 at GUAN_00035257 to GUAN_00035259, and it is attached again here for your convenience.   The cases in which Examiner Kuznetsova has testified over the last four years are listed in her CV.

### DNA Expert

As you know, Tiffany Smith, an analyst at the FBI's DNA laboratory in Quantico, Virginia, is expected to testify about DNA found on the hard drive seized from the dumpster outside defendant's apartment (10/22/20 Disclosure Letter at pp. 6-7).  Ms. Smith is also expected to testify that there is very strong support to include defendant as a contributor of DNA to a screwdriver kit.  The bases for Analyst Smith's conclusions and analyses are set forth in greater detail in the discovery previously produced to you in this case at GUAN_00002120 to GUAN_00002122,  GUAN_0003400 to GUAN_00034699,  and GUAN_00000862 to GUAN_00000959.  The cases in which Ms. Smith has previously testified (during the last four years) were disclosed in the CV that we produced to you in our disclosure letter on October 22, 2020.

In addition, we expect that Analyst Smith will opine that DNA on an evidence item may be affected due to exposure in the field from environmental factors such as ultraviolet light, heat and atmospheric exposure, and the duration of the exposure.  Bacteria found in soil and mold can break DNA (meaning degradation of the rungs between DNA molecules) and create variations in fidelity.  Other ways DNA samples may be affected relate to the surface where the DNA was collected, as well as the materials the surface was in contact. Smooth surfaces do not retain DNA material well,  and rubbing against something like a clean sock or napkin could remove some of the DNA.

### U.S. Visa Process

The government has identified Michael Cole, a U.S. State Department employee and the current Director of the Los Angeles Passport Agency, as the witness who will testify regarding the procedures and requirements to apply for and obtain a visa from the U.S. Department of State to travel from the PRC to the United States, as referenced in our October 22, 2020 notice (pp. 5), and about the significance to visa examiners of a visa applicant's certification of that application and denial of prior military service.  A copy of Mr. Cole's CV, which describes his training and experience, is attached to this Notice.

### Digital Devices, Federal Bureau of Investigation Forensic Examiners

The government expects that FBI forensic examiners Andrew Y. Jaung and Keanu L. Beltran will testify about the topics disclosed in our October 22, 2020 letter (pp. 7).  Examiners Jaung and Beltran's resumes, which describe their training and experience, are attached to this Notice.  The government anticipates that Examiner Beltran's testimony will be limited to the topics previously disclosed to you.

In addition, the government expects that Forensic Examiner Jaung will testify about data retrieved from the Lenovo L450, the MacBook Pro, the iPad Air 2, the Huawei Honor phone, the

RE:  United States v. Guan Lei, CR 20-127-MWF
February 12, 2021
Page 5

iPhone XR, the iPhone 7, the Xiaomei phone, the USB Drive, the Seagate External Hard Drive, and Google metadata obtained from the 18 U.S.C. § 2703 search warrant in this case.  Examiner Jaung is expected to testify about the dates that certain software and operating systems were installed, digital artifacts recovered, internet searches performed, text messages sent and received, and the absence of retrievable data prior to various dates in July 2020.  A summary of Examiner Jaung's anticipated conclusions about each device and the relevant metadata is attached hereto as **Exhibit 1**.

Examiner Jaung's conclusions are based upon his analysis of the data from defendant's digital devices and cloud accounts produced to you in discovery in this case.  Again, while the government expects that this testimony will be factual, rather than opinion, we nevertheless disclose the anticipated substance of his testimony to you here out of abundance of caution.

**Supplementation of This Notice**

The government reserves the right to revise and supplement this notice, and to give advance notice of additional expert witnesses whom it intends to call at trial.

**Request for Reciprocal Discovery**

With this letter, the government requests all reciprocal discovery to which it is entitled under Rules 16(b) and 26.2 of the Federal Rules of Criminal Procedure.  The government also requests notice of any intention of your client to rely on an entrapment defense, or a defense involving mental condition or duress, and/or an alibi defense.  Pursuant to Federal Rule of Criminal Procedure 12.1, the dates, times, and places of the charged offenses are detailed within the documents included within the discovery.  Please contact me immediately if you believe that this notice is insufficient.

Very truly yours,

/s/ William M. Rollins

William M. Rollins
Assistant United States Attorney
National Security Division

Enclosures:  Exhibit 1;  Witness CVs