TRACY L. WILKISON
Acting United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
WILLIAM M. ROLLINS (Cal. Bar No. 287007)
GEORGE E. PENCE (Cal Bar No. 257595)
Assistant United States Attorneys
Terrorism and Export Crimes Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-7407/2253
     Facsimile: (213) 894-2927
     E-mail:    william.rollins@usdoj.gov
     george.pence@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>             v.<br><br>GUAN LEI,<br><br>         Defendant. | No. CR 20-127(B)-MWF<br><br>GOVERNMENT'S SECOND RENEWED AND SUPPLEMENTAL MOTION TO COMPEL RECIPROCAL DISCOVERY<br><br>Hearing Date: 6/7/2021<br>Hearing Time: 1:30 p.m.<br>Location:    Courtroom of the<br>             Hon. MICHAEL W.<br>             FITZGERALD |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys George E. Pence and William M. Rollins, hereby files its Second Renewed and Supplemental Motion to Compel Reciprocal Discovery.

//

This Motion is based upon the attached memorandum of points and authorities, the exhibits thereto, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 7, 2021                    Respectfully submitted,

                                          TRACY L. WILKISON
                                        Acting United States Attorney

                                        CHRISTOPHER D. GRIGG
                                        Assistant United States Attorney
                                        Chief, National Security Division

                                               /s/
                                        GEORGE E. PENCE
                                        WILLIAM M. ROLLINS
                                        Assistant United States Attorney

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

After the government filed a motion to compel reciprocal discovery (CR 77), and thereafter filed a renewed and supplemental motion to compel that discovery (CR 142), the Court ordered defendant to comply with his reciprocal discovery obligations by April 30, 2021 (CR 160).  Defendant did not comply with the Court's order.  Instead, defendant's counsel sent the government an email identifying by name some, but apparently not all, the witnesses defendant intends to call at trial.[1]  Defendant did not produce any documents or objects or reports of examinations or tests.  See Fed. R. Crim. P. 16(b)(1)(A)-(B).  Moreover, defendant's disclosure, such as it is, fails to identify any of these witnesses as purported experts, fails to state the bases for any such expert testimony, and fails to provide a written summary of such testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence, as required by Federal Rule of Criminal Procedure 16(b)(1)(C).

In addition, one of defendant's anticipated witnesses, defendant's advisor at the University of California, Los Angeles ("UCLA"), Professor Wotao Yin, has already told the government that he intends to invoke his right against self-incrimination if asked questions by the government under oath.  The possibility that Prof. Yin might assert that right at trial requires that the Court ensure he is advised by counsel and raises the specter of a mistrial, especially if Prof. Yin were to make such an invocation during his

---

[1] A copy of defense counsel's email is attached hereto as **Exhibit A**.

direct or cross-examination, resulting in a substantial waste of the Court's time and resources.

By this motion, the government again requests that the Court compel defendant to satisfy the requirement to produce reciprocal discovery pursuant to Rule 16(b) at least two weeks in advance of trial, so that the government has a fair opportunity to evaluate those disclosures and, if necessary, challenge the admissibility of defendant's proffered expert testimony pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999). These measures are also necessary so that the Court can perform its gate-keeping function with respect to the admission of evidence at trial.

## II.  ARGUMENT

As set forth in its original and renewed motions to compel reciprocal discovery, which are incorporated herein by reference, Rule 16(b) provides that when a defendant has requested that the government produce discovery in accordance with Rule 16(a), and the government has complied, the defendant must provide reciprocal discovery to the government. The purpose of Rule 16(b) is to ensure that discovery is a "two-way street." United States v. Stackpole, 811 F.2d 689, 697 (1st Cir. 1987). A defendant's failure to comply with the requirements of Rule 16(b) provides grounds for excluding any evidence defendant has improperly failed to produce. See Taylor v. Illinois, 484 U.S. 400, 410-11 (1988). The Ninth Circuit and other courts have adopted this view in excluding evidence as a sanction for defendants' failure to comply with reciprocal discovery obligations. See, e.g., United States v. Scholl, 166 F.3d 964, 972

1  (9th Cir. 1999) (affirming exclusion of evidence apparently withheld
2  so that government would be unable to fully investigate).
3      Defendant's disclosure appears to identify three people who
4  defendant may call upon to offer expert testimony at trial – (1)
5  Prof. Yin, (2) attorney Armineh Ebrahimiian, and (3) an unnamed
6  "military officer from China" – though the subject matter of their
7  expected testimony is far from clear.  The disclosure also identifies
8  defendant's girlfriend Zhihui Yang and defendant's former roommate,
9  Meng Zhao, but, again, the government is left to guess whether
10 defendant expects to elicit and seek to admit expert testimony from
11 these witnesses.
12     With respect to Prof. Yin, defendant's disclosure states merely:
13 "you have the 302 interview."  A copy of the Federal Bureau of
14 Investigation ("FBI") report of its interview of Prof. Yin is
15 attached hereto as **Exhibit B**.  As that report reflects, Prof. Yin
16 made statements to FBI that relate to his purported expertise in
17 computer science and the administration of Chinese academic
18 institutions.  Specifically, Prof. Yin said that his research was
19 "not in sensitive areas," that defendant was the "best programmer in
20 his lab," that defendant worked on a "consumer GPU," that defendant
21 "wrote code, always from public data sets," that "[t]heir research
22 was not worth taking, because the field moved too fast," that "it was
23 normal for students to go through two weeks of military style
24 training on a Chinese campus," and that the National University of
25 Defense Technology, where defendant is a doctoral candidate, "had
26 many civilians."
27     The bases for these opinions are not fully illuminated by the
28 FBI's report, nor are they clarified in any way by defendant's

3

barebones disclosure.  What's more, in Fall 2020, Prof. Yin informed the government, through his counsel, that he intended to invoke his rights under the 5th Amendment to the U.S. Constitution and not answer under oath any further questions presented to him by the government.

With respect to Mr. Ebrahimiian, defendant's disclosure is even more opaque.  The disclosure states only, "the lawyer who tried to extend the J-1 visa."  It is unclear what relevant testimony Mr. Ebrahimiian may have to offer, much less whether any of that testimony relies on his legal expertise, including about the process for applying for or extending visas to study in the United States. It is also unclear whether defendant intends to assert or waive the attorney-client privilege with respect to any communications he might have had with Mr. Ebrahimiian, which further complicates the government's and the Court's assessment of whether defendant plans to offer Mr. Ebrahimiian as a percipient or an expert witness, or some combination of the two.

Finally, defendant's disclosure alludes to the possibility the Chinese government might "accomodat[e] [his] subpoena/request to have a military officer from China come to the US as a witness" but that defendant "may not be able to determine their cooperation until the trial is in process."  Defendant's lack of success in securing the testimony of such an expert witness does not release defendant from Rule 16's requirements.  This disclosure is plainly deficient, as it does not identify the witness, the expected expert testimony, or the bases thereof.  And to the extent defendant may seek to identify and call such an expert witness after trial commences, that approach

would almost certainly cause delay and inconvenience the Court and the jury.

### III. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court again order defendant to comply with his reciprocal discovery obligations.

Dated: May 7, 2021              Respectfully submitted,

                                TRACY L. WILKISON
                                Acting United States Attorney

                                CHRISTOPHER D. GRIGG
                                Assistant United States Attorney
                                Chief, National Security Division


                                     /s/
                                ─────────────────────────────
                                GEORGE E. PENCE
                                WILLIAM M. ROLLINS
                                Assistant United States Attorney

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

# EXHIBIT A

| | |
|---|---|
| **From:** | Harland Braun |
| **To:** | Rollins, William (USACAC); Pence, George (USACAC) |
| **Cc:** | Bin Li; harland@braunlaw.com |
| **Subject:** | Rule 16 Compliance |
| **Date:** | Saturday, May 1, 2021 9:49:58 AM |
| **Attachments:** | image001.png |

As you can glean from our earlier filings, I do not approve of the label "reciprocal discovery" because the constitutional bases for prosecution discovery and defense disclosure are different. In fact, compelled discovery beyond Rule 16 is a violation of our client's Fifth Amendment rights. Nevertheless we do at this time have some idea who we might call and the evidence we intent to present if you survive a Rule 29..

Two of your counts involve Mr Guan's statements to the FBI which implicates more than just short excerpts of the interviews. The other count involves his alleged interference with an FBI investigation by destroying a hard drive. We have no idea what the investigation was about or how destroying his fiancé's hard drive interfered with the investigation. Mr. Guan is not and was never a member of the Chinese military as your own experts establish. The FBI interrogation about additional digital storage was so cursory that no one would understand what the agent was attempting to learn particularly using a language that does not have a second person plural. Despite this chaos and ambiguity, we have made a few decisions at this time.

We plan to call:

>(1) Zhihui Zhang who you have interviewed and whose testimony will consist of the recorded deposition.
>(2) Professor Wotao Yin –you have the 302 interview
>(3) Armineh Ebrahimiian—the lawyer who tried to extend the J-1 visa
>(4) Guan Lie's interview with the FBI. We plan to offer most of

>the transcript of two interviews with the FBI agent. Normally they would be hearsay but you will be presenting limited excerpts of the interviews.. We will offer much of the balance to explain the excerpts you offer as well as the oppressive tone of the interviews. You need not wait to prepare your excerpts because we intend to present the balance of the interviews as part of our case. We do not want to mislead the jury to believe you made a fair presentation of Mr. Guan's statements.
>
>(5) Meng Zhoa==the roommate already interviewed by the FBI

As you must understand, some of our case will be presented through the cross-examination of your witnesses. We assume the experts have read the interviews of the other experts. However, we do not concede that a proper foundation can be laid that Mr. Guan is a member of the military through "experts." You might consider dismissing that count.

As you probably know, the Chinese government has determined that the sending of PhD candidates and PhD scholars to the US constitutes a brain drain to their disadvantage. They therefore are trying to terminate that part of the program. The fear created by this case may assist them in that regard. We therefore do not know whether they will assist us in voluntarily accommodating our subpoena/request to have a military officer from China come to the US as a witness. We will alert you as soon as we know, but we may not be able to determine their cooperation until the trial is in process.

Sincerely,
Harland Braun

**BRAUN&BRAUN LLP**
Trial Lawyers | Trusted Counsel
10880 Wilshire Blvd., Suite 1020
Los Angeles, CA 90024

(310) 277-4777
harland@braunlaw.com

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Braun & Braun LLP

# EXHIBIT B

FD-302 (Rev. 5-8-10)

Serial 17
-1 of 2-

UNCLASSIFIED//FOUO

FEDERAL BUREAU OF INVESTIGATION

Date of entry    07/29/2020

     UCLA Professor Wotao YIN was telephonically interviewed from the FBI Los Angeles Field Office. UCLA attorney ▉▉▉▉▉▉▉▉▉▉ facilitated the conversation using his mobile phone, ▉▉▉▉▉, and was on the call. After being advised of the identity of the interviewing Agent and the nature of the interview, YIN provided the following information:

     National University of Defense Technology (NUDT) researchers were described as quality, pretty strong, and very good. YIN's research was not in sensitive areas. GUAN Lei contacted YIN directly about researching with him in the United States. GUAN was a quality researcher and had a strong resume. YIN was interested in GUAN's field as well.

     GUAN's math was not good, but he was the best programmer in YIN's lab. GUAN was the best use of YIN's 2080TI GPU, which was a consumer GPU. YIN was happy to share configurations of the GPU with the FBI. There was nothing that concerned YIN about GUAN's access to the GPU. There was nothing private and everything would be published. YIN never wanted to patent anything.

     YIN would be upset if someone published his work without him, but sharing was a common thing which helped attract people to his lab. GUAN posted a paper on archive.org.

     Researchers shared their work to test ideas. GUAN wrote code, always from public data sets. Multiple people used YIN's GPU, each with their own username and password.

     YIN was the most senior manager of the GPU user accounts and their was a firewall for the department. Sharing of username and password was not allowed. If someone did this, YIN would be unhappy because it would use UCLA energy and UCLA as paying the bill.

UNCLASSIFIED//FOUO

Investigation on   07/18/2020   at   Los Angeles, California, United States (Phone)

File # ▉▉▉▉▉▉▉▉▉     Date drafted   07/28/2020

by   Timothy Daniel Hurt

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

GUAN_00000115

FD-302a (Rev 5-8-10)                              Serial 17

UNCLASSIFIED//FOUO

Continuation of FD-302 of (U//FOUO) Interview of Wotao YIN - UCLA Professor , On 07/18/2020 , Page 2 of 2

    YIN planned to close GUAN's account once he departed the United States. GUAN's code was the most advanced, if anything people would steal GUAN's code and not the code made by others.

    No activity from GUAN would have alarmed YIN. Their research was not worth taking, because the field moved too fast. YIN did believe Chinese institutes may have a reason to hack US institutes.

    GUAN did not work on any US government-funded projects. GUAN's pay came from his funding. Researchers could get travel reimbursements. GUAN was not paid by UCLA.

    YIN visited NUDT's math department to give a talk. He didn't enjoy the trip because the military had bad hotels. YIN thought it was normal for students to go through two weeks of military style training on a Chinese campus with PLA officials teaching to march, discipline, and political implications. It was pretty universal and to honor traditions. This may have changed since YIN graduated in China.

    GUAN was allowed to keep the code he developed at UCLA. He was also allowed to email it and put it on GitHub. GUAN did not have a UCLA email address.

    YIN didn't think GUAN could have done any damage to UCLA. NUDT had many civilians and many were affiliated with the People's Liberation Army. GUAN never told YIN if he was military or not.

UNCLASSIFIED//FOUO

GUAN_00000116